May it please the Court, I'm Ken Esserlis. I represent David Linder, the plaintiff in this case. I would ask to reserve about three minutes of my time for rebuttal, and of course I'll try my best I can to answer any questions the Court may have this morning. David Linder appeals the District Court's summary judgment dismissal of his wrongful termination case. Specifically, Mr. Linder appeals the Court's ruling as a matter of law that he is not disabled, has not limited, substantially limited in any major life activities under the Rehabilitation Act. Now while that's ordinarily a question of fact, and should in fact not have been decided against Mr. Linder on summary judgment, the Court did that. I'll talk about why that ruling is erroneous. I'll also talk about why, based on the record here, the Court should have, and we're asking that this Court do, now grant Mr. Linder's motion ruling as a matter of law that he is disabled and that the government, his employer, failed to accommodate him. But doesn't the evidence show that he's really disabled from the job in Coeur d'Alene? I mean, it seems like he's a mid-level manager stuck between demanding superiors and low-performing employees below him. And he's able to do the job, he's just not able to do the job in Coeur d'Alene, not because of anything, any disability he has, but it's simply the situation that's got the better of him. I think it's the situation, Your Honor, that triggered the problem. But once the situation triggered the problem, particularly the post-traumatic stress disorder, the medical evidence is pretty clear that the resulting limitations, both on and off the job, extended well beyond the Coeur d'Alene situation and, as a result, caused him to suffer from what became diagnosed as post-traumatic stress disorder and a severe depression. And because the Coeur d'Alene job was the trigger for the post-traumatic stress disorder, the recommendation was that he be reassigned as a form of accommodation. But I don't think that the condition, while perhaps, again, starting in Coeur d'Alene, was simply contained within the Coeur d'Alene workplace. I think, rather, again, what happened is, once Coeur d'Alene triggered the condition, Mr. Linder went through a couple of years of pretty extensive psychotherapy treatment and, clearly, long gone from Coeur d'Alene, the condition and the symptoms continued. How long was he in Coeur d'Alene, like eight weeks or something? Just a few months. I think he was there, he started in April, and he left in May or June to take this leave. I beg your pardon. I didn't mean to step on your line there. That's fine. Did his symptoms happen everywhere or just at work? His symptoms, according to the record, happened everywhere. He had trouble getting along with neighbors. He became reclusive. He left work on a medical leave and then that medical leave turned in, unbeknownst to him, to AWOL status. And then, after he agreed to apply for disability retirement benefits, he was, again, no longer at work and receiving sick leave until the disability retirement claim was approved. So, he was in Coeur d'Alene, as was pointed out, for a relatively short time, but the symptoms and this process went on from, really, mid-2003 until September of 2004 when his employment ended. And, according to the record, the symptoms continued throughout that time, even though he didn't... Did he ask to be assigned to a different facility? He did. He asked for a transfer. His doctor, equally importantly, wrote to the agency, the Postal Service, and said, My goal is to return this man to work. To do that and to address his disability, he needs to be reassigned. So, we have indicated that that request, while not using the magic language, accommodation or disability, was, in fact, a request for an accommodation, specifically a reassignment. Why doesn't that then suggest that this is a Coeur d'Alene-specific problem? Because Coeur d'Alene became the trigger or the cause of the condition. The condition, however, as reflected in the treatment records and the statements of the treating providers, the condition continued for over a year after he was long gone from Coeur d'Alene. And so, much as returning any post-traumatic stress disorder patient to the cause of the trauma would, no doubt, light up that trauma, the problem, while, again, originating and caused by Coeur d'Alene, did not stop when the work in Coeur d'Alene stopped and, in fact, supported the disability retirement claim that the government itself awarded. And, again, resulted in continued treatment for more than a year. What is troubling about the court's decision is that we're looking at a statute, the Rehabilitation Act, which holds the federal government to a higher standard than it holds private employers. The Rehabilitation Act also reflects the government as a model employer of people with disabilities. And yet, despite that, after Mr. Lindner's doctor said he needs a reassignment because of his medical condition, the government sent him what it, in my view, most euphemistically calls an options letter and said, here are your options, return to work if your doctor will release you, which the doctor wouldn't do, quit or be fired. So, really, his options were an ultimatum, quit or be fired. And given the broad requirement that this law protect people with disabilities, and the government, more than any other employer, recognized that, the government's conduct, in our view, fell well below that standard, given the medical evidence here of the significant and debilitating and consistent nature of the impairment and the limitations. In our view, the court's denying Mr. Lindner his day in court and throwing him out on summary judgment, when it's acknowledged that the whole substantial limitation of major life activity is a factual question, certainly goes beyond what this law is contrary to the purpose and spirit of this law. And I think looking at what's erroneous about the court's ruling, although there's lots of stuff in this record, the footnote that the court wrote and then withdrew is very instructive. In that footnote, the court noted Mr. Lindner's intrusive flashbacks, three to five times a day, 15 to 20 minutes each time, and the court said, with that degree of limitation, if the evidence supported it, Mr. Lindner would undoubtedly, in the court's word, be disabled or be substantially limited. We noted in a reconsideration motion where the evidence did establish that, from the treating health care providers, the court, without any explanation, withdrew the footnote. The government suggests that that means we're challenging a finding that no longer exists. That's not so. First of all, there are no findings at the summary judgment stage, of course. And secondly, we're not challenging the footnote, whether it exists or not. We're simply suggesting that that footnote is an accurate statement of the law. Somebody with that degree of limitation, intrusive flashbacks three to five times a day, 15 to 20 minutes at a time, interrupting whatever they were otherwise doing, is, in fact, substantially limited. And as it happens, the evidence clearly supports that. You said you wanted to reserve three minutes. I do. And I'll just stop here and say only this, that Mr. Lindner asked that the district court's ruling be reversed, that his motion be granted as to him being disabled and as to the employer, the Postal Service, failing to accommodate his disability when they sent him a letter and said, sorry, we're not agreeing to what you propose. And that's the end of the discussion. Just quickly, was the summary judgment motion, the request motions for summary judgment? Yes, Your Honor. And yours was universal? Ours was universal as to the existence of the disability and liability for the failure to accommodate. There were other issues that remained. But given this court's ruling in the Humphrey case that writing to somebody and saying, we don't like your proposed accommodation, end of process, establishes liability as a matter of law, had the court reached that issue as we asked it to do, we feel and ask that this court rule that there was a failure to accommodate what is a clear disability. Thank you. Thank you. Thank you. Good morning. Andrew Biviano on behalf of the United States. I think the most damning evidence against Mr. Linder's case was Mr. Linder's other case in a sense, that his facts and assertions were so inconsistent throughout this whole case that the court found the contradictions and the rebuttals in his own words. I think that the best example might be that Mr. Linder now tells the court, and told the district court, that he could be accommodated or could have been accommodated by transferring to any one of Dozen's positions just like the one he had in Colorado. It's not relevant now. I mean, it's not relevant to the current issue, which is whether he's disabled. Well, Your Honor, I think it is because of the... But our summary judgment and the credibility issues aren't relevant. So the question is whether he has, whether there is a sufficient showing to get to a jury on the disability issue. Well, Your Honor, the reason why I mention that was not because of the credibility, because of the underlying facts that that asserts, that that's asserting that I am capable of doing this position. And that's the key here, and that's what the judge had in front of him. At the same time, Mr. Linder also asserted factually that I, my doctor stated I couldn't supervise in Coeur d'Alene or anywhere else. And those are the facts the judge had to consider to support his finding. Mr. Linder seemed... Isn't part of the problem just different time periods? In other words, originally he was saying, I just want to go somewhere else. And then he took some time off, and then he said, I'm not getting better. And then at that point, it wasn't until after that that he went to the Disability Committee of the Postal Service, which, as I understand it, are somewhat different facts. I mean, at that point, his doctors were saying, well, you really can't work as a supervisor anymore. You can stop me if my facts are wrong, but this is what I understood. I can't work as a supervisor, and really what I need is more time off and then maybe a job in a little room where I don't have to talk to anybody. So you have to take account of the time frame, it seems to me. Your Honor, there certainly is a change in the circumstances over time. And as I mentioned in the brief, there's not consistent requests from the beginning to the end. The beginning is asking for 12 weeks off. Well, that makes sense, doesn't it? Of course, of course. And so what needs to be addressed by the court is what the employer knew at the time that it actually made the decision. And that District Reasonable Accommodation Committee that met in November... Well, I'm not sure about that either. I thought about that, and I thought it was an interesting point. But, again, we're at the threshold threshold at this point, which is whether he was objectively and in fact a disabled person under the statute. The rest of it comes, I think, down the line as to whether or not the government or the employer is liable for accommodation. And it may well be a defense that we did everything we had to do with the information we had.  Well, Your Honor, I would say it would matter for the harmless error review, just on the record, that there was several grounds for summary judgment before the district court. And if the record reveals that the other grounds were also sufficient, it does matter to the extent the court finds that the grounds he did rule on were not. Help me to stick to the first subject. Sure. But we're sticking to that first subject, of course. I think the issue is what the employer knew at the time that it was making this decision that's being challenged by Mr. Lindberg. That's what I'm saying. Why is that the question? Because of the time frame. We're looking at everything. I'm not saying to look only at the one meeting. But at that one meeting is when the opportunity to really get all the facts out. And you can consider... I know. But what I'm saying, you weren't listening to what I was saying. It seems to me that this statute is set up oddly. There's a threshold, almost, you know, foot in the door requirement that you be at the relevant time a qualified disabled person. Not that the employer know it or anything else, but that you be one. That's the foot in the door. Then there are various employer responsibilities to which the knowledge might be relevant. But I don't know that the knowledge is relevant to this threshold determination. In that case, Your Honor, looking at whether he was objectively disabled in the time frame, the judge correctly ruled that this is an issue of fact. The summary judgment standard is not whether it's a genuine issue of material opinion. And Mr. Linder was trying to use opinion testimony from 2006 and 2005 to say, oh, yeah, by the way, in 2003 I was disabled in these ways that I didn't think about back then. At that time, his disability was only allegedly an inability to work. And so the court said... It was only... An inability to work in his previous job. So the court said, I see the opinions. I'm going to look past those and see are there any facts that show at that time you actually were... Opinions written in terms of retroactive opinions. That's the problem is that they weren't, Your Honor. This is not a situation where there's a closed world of the relevant time period and they're just commenting on that. They're mentioning the symptoms that Mr. Linder relies upon to establish his disability in 2003 weren't ever mentioned in 2003, at least the majority of them. He was... I'm asking the opposite question. Were there 2006 declarations written in terms of what his situation was in 2003? Some were and some weren't. Some, I believe Dr. Bott was assessing how he was at that time when he saw him in 2005. Some of the doctors didn't actually see Mr. Linder in 2003 or 2004. And some, Dr. Roth, for instance, had seen him at that point but was bringing up new information that wasn't mentioned in 2003. What did you make of the flashback testimony? That was a good example of what the court was saying was missing from Mr. Linder's case. He needed to find somewhere in the record that factually said this actually occurred. And then they point out that it really was there and then the judge takes the footnote out. Well, I can only speculate as to why the judge took the footnote out. But I think what he was getting at was the fact that conclusory allegations are not enough to make a genuine issue of fact. And it needs to be, on summary judgment, under all the cases, Wong, McAllendon, there needs to be something that shows it on the experience level, especially under Toyota. Was there, in fact, evidence that he was having flashbacks? There isn't from 2003. They're saying that there's nowhere in any documentation in 2003 from his doctor's notes, from his letters. Well, that's not so. He said something to the effect, and I think about it all the time. It's just a different word for the same thing. I don't believe so, Your Honor. I think that the big key, what the judge is getting at, is he needs to actually describe how bad that is. To say, I'm really upset, doesn't mean that I have... He said specifically, as I recall, something to the effect of, and during the day I think about this all very frequently. Isn't that the same as flashbacks? Well, there's a large spectrum there, Your Honor, between that. I understand that, but to say he didn't say it is not true. There must have been ruminating about something in flashing back. But the standard is for, it has to be a high standard under Toyota, a substantial limitation. Not just limitation, but substantial. Same thing that McAllendon said. It needs regular, severe, pervasive problems. And there's nothing in there to show that it was pervasive. Can I ask a question? Is this time frame difference your whole argument? I mean, are you essentially saying that if the 2005-2006 evidence was pertinent, he would be disabled? Absolutely not. Why do you spend so much time on it? Well, because Mr. Linder relies on that. On first appearances, when he cites six or seven different declarations and reports, that's saying why he was disabled. And you look deeper and say that he's not able to rely on anything factual. It's just opinions from afterwards. Well, of course there are going to be opinions. What else are there going to be when there are disabilities? Because the opinions are... When there are mental disabilities. The opinions are fine. It's the facts need to be there. If you had a test at a time, if it's a medical disability, for instance, you need those medical blood tests and blood pressure. Have him do with regard to – let's suppose he had really severe depression and really had – and peed, cast, and everything else. What would the evidence look like that would be different? What would you want him to show you? If Mr. Linder had actually been asserting these limitations at the time, which I think is significant that he wasn't. He wasn't saying – even in layman's terms, he didn't say, I have a substantial global limitation in my ability to think. He said, this job makes me unable to return because I can't think when I'm there because it stresses me out. And the judge needs to have, even in mental disability, some objective, measurable symptoms. And somewhere in there, he needs to say, I have flashbacks this frequently for this long, and here's how it affects substantially a major life activity. Not in medical terms, but somewhere. He didn't mention it on his job to anybody. He didn't mention it to a friend. There's nobody else that can testify to that. There's nobody – no medical record saying that. And maybe you could ask him about why this is not all credibility information. I mean, there's timeframe problems and there's credibility problems. I understand both of those. But – and they're serious. But it would still be helpful to have an analysis of whether, if we take all of the information and consider it ought to be pertinent, is he disabled or not. Your Honor, my response would be to refer to the court's opinions in Hansen versus U.S. and Giedras versus Missouri Pacific, which says that opinions are not enough. The court is required to look to the underlying facts for those opinions under the summary judgment standard. And so the court saw the opinions and didn't say they were worthless, but said this is not enough, these are not the facts I'm looking for in a summary judgment standard. This is not a motion to dismiss standard where you just take the allegations as true. You have to say, can these allegations be supported by facts? And at trial, one cannot prevail solely on a doctor's opinion that has no facts to support it. So that's why the judge had to look beyond just the 2006 opinions and go to what was actually being stated and known and addressed and noticed in 2003 and 2004 and found it's not there, that it was something that occurred to the doctors to mention only after a lawyer had gotten involved in the case and realized there needed to be a new legal theory for the disability and said let's look back and see if there are any symptoms that weren't mentioned. Thank you very much. Thank you. You've got about a minute and 40 seconds left. Thank you. Given Mr. Lindner's service to the Postal Service, given the nature and extent of his impairments, and given the contemporaneous references in his treating health care providers' records to his symptoms, which were then summarized and presented to the court in 2006, it's frankly offensive to suggest that he just got a lawyer and made this all up. His 30-year career ended because of this. This was hardly minor, it was hardly incidental, and it trivializes what is a huge change, a life-changing event in this man's life. When did he first mention the flashbacks? Dr. Smith, his records note the flashbacks back in 2003. Dr. Smith is the guy that the Postal Service itself sent Mr. Lindner to through its employee assistance program. Dr. Smith did an assessment to determine whether Mr. Lindner met the criteria of post-traumatic stress disorder, and he found that he did. That's referenced in his contemporaneous treatment records from 2003. Did he call them flashbacks or ruminations, or what did he call them? I believe he called them intrusive flashbacks. That was in his notes? Where's that in the records? I believe it's at tab 31, page 209, and if I'm wrong about that, I apologize. But it's in the doctor's contemporaneous medical records? It is, and it's part of his assessment tool to determine whether post-traumatic stress disorder existed. Dr. Estelle saw Mr. Lindner in 2004 while he was still a Postal Service employee, and the Postal Service still owed him an obligation, and he notes that when he saw Mr. Lindner, Mr. Lindner was experiencing interruptions or ruminations that occurred, again, three to five times a day, 15 to 20 minutes at a time. Thank you very much. I know I'm out of time. One last question. The concentration problems are also in contemporaneous notes? They are. Thank you very much. The case just argued is submitted. Good morning, gentlemen. Thank you. 0735814B reverses City of Federal Way. Each side has ten minutes.
judges: Silverman, Berzon, Mahan